EL PUEBLO DE PUERTO RICO, demandante y peticionario, *v.* MARY PACHECO TORRES, demandada y recurrida.

*Número:* CE-89-522          *Resuelto:* 25 de junio de 1991

*Carmen Ana Rodríguez Maldonado* y *Enrique Rivera Mendoza,* abogados de la recurrida; *Jorge E. Pérez Díaz, Procurador General, Norma Cotti Cruz, Subprocuradora General,* y *Ricardo E. Alegría Pons, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

A solicitud del Procurador General de Puerto Rico, revisamos el dictamen del Tribunal Superior, Sala de Ponce (Hon. Julio Alvarado Ginorio, Juez), que resolvió que carecía de jurisdicción para entender en el trámite de revocación de probatoria contra Mary Pacheco Torres.

Dicho foro decidió que:

> *En el presente caso las violaciones a las condiciones impuestas ocurrieron dentro del período probatorio. También la expedición de la orden de citación se llevó a efecto dentro del período probatorio.* No obstante la citación fue preparada y *expedida veintid[ó]s días después de haber expirado el término del período probatorio.* Resolvemos que tal dilación violó el debido procedi-

miento de ley al cual tiene derecho la probando, por lo cual este Tribunal perdió jurisdicción en el caso por haberse cumplido el período probatorio. Anexo X, pág. 20.

I

Expongamos sucintamente el trasfondo procesal, fáctico y de cronología que origina ese dictamen. Pacheco Torres fue acusada de infringir el Art. 272 del Código Penal, 33 L.P.R.A. sec. 4592, esto es, posesión y traspaso de documentos falsificados. Sin embargo, hizo alegación de culpabilidad por apropiación ilegal simple. Art. 165 del Código Penal, 33 L.P.R.A. sec. 4271. El 24 de mayo de 1988 fue sentenciada a una pena de seis (6) meses de reclusión, a cumplirse bajo el régimen de sentencia suspendida, con sujeción a once (11) condiciones.

El 6 de octubre de 1988 la oficial sociopenal Silvia Martínez Santiago notificó al Fiscal de Distrito que la convicta había violado varias de las condiciones. El 19 de octubre, en conformidad con la Ley Núm. 31 de 29 de mayo de 1986 (34 L.P.R.A. sec. 1027a), el Ministerio Público solicitó del tribunal una determinación de causa probable fundada en la creencia de que la probando había violado las condiciones de la probatoria, y que se comenzara el trámite de revocación final. El 18 de noviembre el tribunal señaló la vista inicial para el 21 de diciembre. Ordenó que se le notificara a ella, a su abogado (Lcdo. Benjamín Pagán), al Fiscal y a la oficial probatorio. La citación de Pacheco Torres fue expedida el 15 de diciembre de 1988.

El 21 de diciembre comparecieron el Ministerio Fiscal, la convicta y su abogado. *Se celebró la vista inicial.* A base de la prueba, el tribunal concluyó que existía causa probable para creer que ella había violada cinco (5) de las once (11) condiciones impuestas. Fijó la vista *final* para el 13 de enero de 1989. En esa fecha, la convicta Pacheco Torres invocó la falta de jurisdicción del tribunal para entender en el asunto. Adujo que el término de la sentencia había sido cumplido. El tribunal, según indicamos, acogió el planteamiento.

## II

Ese dictamen es contrario a los principios vigentes que rigen la materia y altera el balance de intereses inmersos en toda normativa. Nos explicamos.

La Ley de Sentencia Suspendida, Ley Núm. 259 de 3 de abril de 1946, según enmendada, 34 L.P.R.A. secs. 1026–1029, creó un mecanismo alterno para permitirle a un convicto cumplir su sentencia sin tener que ser recluido en prisión. El propósito rehabilitador de esta legislación —*Vázquez v. Caraballo*, 114 D.P.R. 272 (1983); *Pueblo v. Ortiz Martínez*, 123 D.P.R. 820 (1989)— no es incompatible con la seguridad de la comunidad. El tribunal sentenciador puede revocar la sentencia suspendida o probatoria y ordenar el encarcelamiento. Se trata de una facultad fundada en que el Estado es fiduciario de unos intereses públicos que superan a los del convicto. Ahora bien, esa determinación está sujeta al cumplimiento de unas gestiones mínimas bajo la sombrilla constitucional del debido proceso de ley. Como resultado de *Martínez Torres v. Amaro Pérez*, 116 D.P.R. 717 (1985), la Asamblea Legislativa aprobó la Ley Núm. 31, *supra*. De su lectura surge que implícitamente subsiste el enfoque de que la "libertad conferida a un convicto mediante el beneficio de sentencia suspendida no goza de la magnitud ni grado de la que disfruta un ciudadano común. No son equivalentes. La razón es sencilla: 'Mientras una persona goza de libertad a prueba, su disfrute de la vida, su libre albedrío, está restringido, limitado, al cumplimiento de las condiciones fijadas al concedérsele esa gracia. *No puede decirse que es un hombre enteramente libre*'". (Énfasis en el original.) *Martínez Torres v. Amaro Pérez*, supra, págs. 723–724.

## III

En el caso de autos, lo primero que notamos es que la convicta Pacheco Torres en ningún momento fue arrestada o privada de su libertad durante el trámite de revocación. Segundo, indiscutiblemente las alegadas violaciones que originaron ese trámite ocu-

rrieron *durante* la probatoria. El Ministerio Fiscal solicitó su revocación dentro del término de la sentencia. Únicamente la orden judicial de citación y su diligenciamiento acaecieron después de expirado dicho término, en un plazo mínimo.

■ Aparte de lo expuesto, conforme *Martínez Torres v. Amaro Pérez*, supra, págs. 728–729, la vista final de revocación se efectuó dentro del término de treinta (30) días a partir de la celebración de la vista inicial.

*Se dictará sentencia revocatoria.*

El Juez Asociado Señor Alonso Alonso emitió voto particular y de conformidad, al cual se unió el Juez Asociado Señor Andréu García. El Juez Asociado Señor Hernández Denton emitió opinión disidente.

—O—

Opinión disidente emitida por el Juez Asociado Señor Hernández Denton.

Por entender que el tribunal de instancia carecía de jurisdicción para revocar la sentencia en probatoria, disentimos. Al momento de iniciarse el procedimiento de revocación de probatoria, con la expedición de la *citación* para la vista inicial, la sentencia impuesta había sido cumplida. Como el cumplimiento de la sentencia extingue la pena —Art. 81 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 3431— el tribunal perdió la jurisdicción que poseía sobre el probando. Por lo tanto, actuó correctamente al declararse sin jurisdicción y desestimar la moción de revocación de probatoria.

I

La Srta. Mary Pacheco Torres fue acusada por infracción al Art. 272 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4592, por posesión y traspaso de documentos falsificados, y por usar y

circular como verdadero un cheque de seguro social por la cantidad de ciento treinta y ocho dólares ($138), a sabiendas de que tenía un endoso falso.

El *24 de mayo de 1988* el tribunal de instancia dictó sentencia que declaró culpable de apropiación ilegal simple a la señorita Pacheco y la condenó a sufrir seis (6) meses de reclusión. A tenor con la Ley de Sentencia Suspendida, se ordenó la suspensión de su sentencia y quedó la señorita Pacheco bajo la custodia legal del tribunal *hasta que expirara su sentencia el 23 de noviembre de 1988*. Además, se le impusieron once (11) condiciones y una condición especial que debería cumplir durante esos seis (6) meses.

El 19 de octubre de 1988 el Ministerio Fiscal presentó en el Tribunal de Primera Instancia una moción mediante la cual se solicitó que se determinara causa probable para creer que la señorita Pacheco había violado tres (3) de las condiciones de la sentencia en probatoria y se diera inicio al trámite de revocación de la misma.[1] Mediante Orden de *18 de noviembre de 1988*, el tribunal señaló la vista de la moción de revocación para el *21 de diciembre de 1988*. Sin embargo, *no fue sino hasta el 15 de diciembre de 1988 que se expidió la citación, fecha para la cual ya había transcurrido el período probatorio.*

El 21 de diciembre de 1988, tras escuchar la prueba, el tribunal de instancia determinó causa probable inicial para la revocación de la probatoria y señaló la vista final para el 13 de enero de 1989. Tras una moción de desestimación presentada por la defensa, el tribunal de instancia emitió una resolución con fecha de 9 de mayo de 1989 que declaró sin lugar la solicitud de

---

[1] Las condiciones alegadamente violadas fueron las siguientes:

"Usted no encubrirá sus actividades, ni ocultándolas al Oficial Probatorio ni mintiendo acerca de las mismas, ni entorpeciendo cualquier investigación que el Supervisor de la División de Servicios Sociales o el Oficial Probatorio tuvieran a bien hacer acerca de ello." Anejo II, pág. 3.

"Usted permanecerá constantemente y sin interrupción dentro de la jurisdicción territorial del Tribunal Superior, Sala de Ponce, siempre que tenga necesidad de trasladarse fuera de este límite, solicitará el permiso para ello del Oficial Probatorio." Íd.

"Usted se abstendrá de usar drogas narcóticas u otros estupefacientes salvo por prescripción médica." Íd., pág. 4.

revocación de probatoria. Concluyó que al haberse expedido y preparado la citación veintidós (22) días después de haber expirado el período probatorio, el tribunal había perdido jurisdicción sobre el caso. Finalmente, el 5 de junio de 1989 el Ministerio Fiscal solicitó sin éxito la reconsideración de la resolución.

De la resolución que deniega la revocación de la probatoria, acude ante nos el Pueblo de Puerto Rico representado por el Procurador General. Arguye que incidió el tribunal de instancia.

El presente recurso nos hubiese permitido determinar si, después de que transcurre el período probatorio, un tribunal tiene jurisdicción para revocar una sentencia suspendida por una violación a las condiciones impuestas por dicho foro.

## II

Con motivo de nuestra decisión en el caso *Martínez Torres v. Amaro Pérez*, 116 D.P.R. 717 (1985), la Asamblea Legislativa de Puerto Rico aprobó la Ley Núm. 31 de 29 de mayo de 1986 (34 L.P.R.A. sec. 1027a) y creó así un esquema procesal para las revocaciones de sentencias suspendidas. El propósito fundamental de esta ley fue armonizar el interés del Estado en la seguridad de la comunidad con el derecho al debido proceso de ley del cual gozan aún las personas que tienen la libertad limitada por el mecanismo de sentencia suspendida. Véase la Exposición de Motivos de la Ley Núm. 31, *supra.*

A pesar de que la libertad de la que goza un convicto que cumple una sentencia suspendida no es equivalente a la de un ciudadano común, "no puede negarse que estamos ante un valor fundamental acreedor de protección tanto por nuestra Constitución como por la de Estados Unidos". *Martínez Torres v. Amaro Pérez*, supra, pág. 724 y casos allí citados. Debe recordarse que, a pesar de que la revocación de una probatoria o sentencia suspendida no es una etapa del procesamiento criminal, en efecto resulta en la pérdida de la libertad de una persona. Por lo tanto, *no puede*

*privársele de esta libertad limitada sin cumplirse con un mínimo debido proceso de ley.*(2)

Una vez el tribunal de instancia fija la duración del período probatorio, éste podrá revocar la sentencia en probatoria "en cualquier momento en que a su juicio la libertad a prueba de una persona fuere incompatible con la debida seguridad de la comunidad o con el propósito de rehabilitación del delincuente . . .". 34 L.P.R.A. sec. 1029. Al igual que al conceder los beneficios de una sentencia suspendida, el tribunal podrá ordenar la revocación utilizando su sana discreción. Sin embargo, la ley requiere, en síntesis y como corolario del debido proceso de ley, que se cumpla con los requisitos siguientes:(3)

1. Que el Ministerio Fiscal solicite la revocación ante un magistrado para que éste proceda a celebrar una vista inicial *ex parte* de determinación de causa probable para creer que el probando ha violado las condiciones de la probatoria.

2. Que el magistrado decida si va a ordenar el arresto del convicto o si es suficiente con una citación para vista sumaria inicial.

3. Si decide citarlo, esta orden *debe incluir una relación de los procedimientos y dar concisa y clara notificación de las alegadas violaciones a las condiciones de la probatoria.*

4. Se celebrará una vista sumaria inicial de carácter informal para determinar si procede la revocación provisional y el encar-

---

(2) "En general, [el debido proceso de ley] se trata de que el Estado aplique las normas penales a los individuos con rigurosa justicia y precisión, de manera que se minimicen los riesgos de penalizar a un inocente, se proteja a las personas del poder abusivo del Estado y se genere una atmósfera de justicia imparcial." D. Nevares-Muñiz, *Sumario de derecho procesal penal puertorriqueño*, 3ra ed., Hato Rey, Inst. para el Desarrollo del Derecho, 1989, pág. 210.

(3) El 8 de diciembre de 1990 la Asamblea Legislativa aprobó la Ley Núm. 29 (34 L.P.R.A. sec. 1027a) para enmendar el procedimiento de revocación de probatoria a los efectos de proveer "un término expedito para que el tribunal celebre la vista para evaluar si existe causa para creer que el probando ha violado las condiciones de la probatoria". Exposición de Motivos de la Ley Núm. 29 de 8 de diciembre de 1990, Leyes de Puerto Rico, pág. 1514. Así, la ley dispone que la vista inicial *ex parte* se celebrará dentro de las cuarenta y ocho (48) horas siguientes a la solicitud del Ministerio Fiscal y que la vista final debe celebrarse dentro de los quince (15) días siguientes a la vista sumaria inicial. Vemos, pues, que la tendencia es hacia el aceleramiento del proceso completo de revocación de probatoria.

celamiento hasta que se celebre la vista final. El probando puede estar asistido de abogado y tiene la oportunidad de ser oído, presentar prueba a su favor y confrontar al oficial sociopenal u otro promovente de la acción y a los testigos adversos.

5. Se celebrará una vista final dentro de los treinta (30) días siguientes a la vista inicial. Sólo por justa causa o por acuerdo de las partes y con la anuencia del juez podrá esta vista celebrarse fuera del término señalado.

Para esta vista el probando también tiene derecho a ser notificado, por escrito y con antelación suficiente, de las alegadas violaciones a la probatoria para que pueda prepararse de forma adecuada y estar asistido de abogado. También tiene derecho a confrontar a los testigos en su contra y a presentar prueba a su favor. Además, el peso de la prueba corresponde al Ministerio Fiscal, quien deberá probar su caso por preponderancia de la evidencia.

Finalmente, el juez formulará su decisión por escrito, la cual reflejará las determinaciones de hecho básicas, la prueba en que se fundó y las razones que justifican la revocación. La misma será notificada tanto al probando como al Ministerio Fiscal.

## III

A pesar de que nuestra ley contiene todo un esquema procesal para la revocación de las sentencias suspendidas, ésta no dispone si el procedimiento de revocación tiene que llevarse a cabo en su totalidad *antes de que transcurra el período probatorio*, si basta con que se inicie dentro del período o si el tribunal tiene potestad para iniciar el procedimiento luego de extinguida la sentencia suspendida. Tampoco contiene disposición alguna respecto a cuándo se entiende iniciado el proceso de revocación.

Nuestra ley confiere autoridad a los tribunales para revocar una sentencia suspendida *"en cualquier momento en que a su juicio la libertad a prueba de una persona fuere incompatible con la debida seguridad de la comunidad o con el propósito de rehabilitación del delincuente . . .".* (Énfasis suplido.) 34 L.P.R.A. sec. 1029.

Sin embargo, no debe entenderse que este articulado faculta a los tribunales para revocar probatorias aun después de que el probando se encuentra disfrutando de su derecho constitucional a la libertad tras haber cumplido la pena que le fuera impuesta.

Del estatuto surge con meridiana claridad que tanto la Administración de Corrección como el tribunal que impuso la sentencia están autorizados a ejercer su poder de supervisión sobre el probando *sólo durante el período de probatoria*. El Código de Enjuiciamiento Criminal dispone que "[d]*urante el período de libertad a prueba* la Administración de Corrección ejercerá el grado de supervisión que estime necesario para lograr la rehabilitación de la persona y proteger a la comunidad". (Énfasis suplido.) 34 L.P.R.A. sec. 1028. Por su parte, la Sec. 2 de la Ley Núm. 19 de 12 de marzo de 1914 (34 L.P.R.A. sec. 1031), establece que "[d]*urante el término de cualquier sentencia que haya sido suspendida, el acusado quedará sujeto a la autoridad del tribunal en que se impuso la sentencia*, y el juez de dicho tribunal tendrá facultades para prescribir las condiciones para la suspensión de la sentencia, y, cuando esté convencido de la mala conducta del acusado, ordenar su arresto por el tiempo que falta para terminar su sentencia".

Finalmente, la ley dispone que "la duración del período de libertad a prueba . . . será igual a la duración del período fijado en la sentencia". 34 L.P.R.A. sec. 1028. Esto implica que una vez expirado el período probatorio se entenderá cumplida la sentencia y, por lo tanto, *extinguida la pena.*(4) De esta manera, el propio estatuto limita el poder del Estado sobre un convicto al período comprendido en la sentencia que le haya sido impuesta.

Queda claro, pues, que el estatuto no faculta a los tribunales de instancia a ejercer su autoridad sobre los probandos fuera del término de la sentencia. De ordinario, éstos no pueden, por no tener autoridad legal para ello, extender el período durante el cual los probandos están sujetos a su jurisdicción. Por lo tanto, *el*

---

(4) El Art. 81 del Código Penal de Puerto Rico dispone los modos en que se extinguen las penas, entre estos, el "[c]umplimiento de la sentencia impuesta". 33 L.P.R.A. sec. 3431.

*procedimiento de revocación no puede iniciarse una vez el tribunal se ha desprendido de su jurisdicción sobre el probando, es decir, una vez transcurre el período probatorio.*

Sin embargo, si durante el transcurso del período probatorio se inicia el procedimiento de revocación, el tribunal conserva su jurisdicción sobre el probando y puede revocar la probatoria aunque la decisión recaiga luego de cumplida la sentencia.

Así ha sido resuelto en la mayoría de las jurisdicciones norteamericanas. Cohen y Gobert, *The Law of Probation and Parole*, Colorado Springs, Shepard's/McGraw-Hill, 1983, Sec. 11.01, pág. 528. Véanse, a modo ilustrativo: *United States v. Bartholdi*, 453 F.2d 1225 (9no Cir. 1972); *United States v. Bazzano*, 712 F.2d 826, 829 y 834–835 (3er Cir. 1983), *cert.* denegado, 456 U.S. 1078 (1984); *United States v. Williams*, 787 F.2d 1182, 1184 n. 4 (7mo Cir. 1986); *State v. Ladehoff*, 425 N.W. 2d 352, 354 (Neb. 1988); *People v. Gore*, 774 P.2d 877 (Colo. 1989); *State v. Broussard*, 408 So. 2d 909 (La. 1982); *State v. Weysham*, 410 So. 2d 1104 (La. 1982). No obstante, en algunas jurisdicciones se requiere que se inicie y se concluya el procedimiento de revocación antes de que transcurra la sentencia suspendida. Véase M. Carrillo, *La revocación de probatoria cuando ha expirado el término de la sentencia*, 1 Forum 32 (1990); Cohen y Gobert, *op. cit.*, págs. 528–529. Aunque entendemos que no es necesario que la orden de revocación sea emitida antes de cumplida la sentencia, se requiere que el Estado sea diligente en la tramitación del procedimiento.

El objetivo que se persigue con esta normativa es evitar que un probando que ha violado las condiciones de la sentencia suspendida en los días cercanos a la expiración de la misma recupere su libertad incondicional *a pesar de haberse expedido la notificación del procedimiento en su contra.* Sin embargo, ésta le impone al Estado el deber de ser diligente no solamente en la supervisión del probando, sino también en la presentación de cualquier querella que pueda conllevar la revocación de la probatoria. Véase Carrillo, *supra*, pág. 33. De esta forma, se logra un balance entre el derecho constitucional a un debido proceso de ley

en el procedimiento de revocación de probatoria frente al interés del Estado en la rehabilitación del probando y la protección de la comunidad.(5)

Nuestra ley sobre sentencias suspendidas dispone que el Ministerio Fiscal hará una solicitud sobre revocación ante un magistrado del tribunal de primera instancia. A raíz de esta solicitud se celebrará una vista *ex parte* de determinación de causa probable para creer que el probando la violado las condiciones de la probatoria. Una vez el tribunal recibe la petición del Ministerio Fiscal, procederá a expedir el mandamiento de arresto o la citación del probando para la vista inicial. Si se ordena el arresto, en circunstancias normales, se celebrará la vista inicial dentro de las setenta y dos (72) horas desde su arresto.

Para cumplir con los requisitos del debido proceso de ley, tanto la orden de arresto como la citación *deben incluir una relación de los procedimientos y una concisa y clara notificación de las violaciones imputadas.* Este requisito de adecuada notificación es indispensable para que el probando pueda prepararse adecuadamente y estar representado de abogado. Hasta ese momento el procedimiento es *ex parte* y el probando *no ha recibido ninguna notificación oficial de las violaciones que se le imputan* y, de ordinario, no tiene conocimiento de la acción que el Ministerio Fiscal pretende iniciar en su contra. No es hasta que el tribunal celebra la vista *ex parte* y notifica al probando mediante citación u orden de arresto que se inicia el procedimiento de revocación de probatoria. Véanse, a modo ilustrativo: *Carroll v. Cochran*, 140 So. 2d 300 (Fla. 1962); *Hopson v. State*, 339 So. 2d 1152 (Fla. 1976); *State v. Hunter*, 391 So. 2d 844 (La. 1980); *Sherman v. Warden, Nevada State Prison*, 581 P.2d 1278 (Nev. 1978); *State v. Gibson*, 384 A.2d 178 (N.J. 1978).

Por último, además de que se expida la citación al probando dentro del período de su sentencia suspendida, el debido proceso

---

(5) El hecho de que no se inicie contra un probando el procedimiento de revocación de sentencia suspendida antes de expirado el período probatorio no significa que saldrá impune. Si las violaciones a las condiciones de la probatoria constituyen delito, el Ministerio Fiscal, si así lo entiende procedente, puede presentar las acusaciones que correspondan.

de ley requiere que dicha notificación sea diligenciada dentro de un período razonable. Una tardanza irrazonable en el diligenciamiento podría causar un incumplimiento con el debido proceso de ley. Véanse, a modo de ejemplos; *United States v. Gernie*, 228 F. Supp. 329, 332–339 (S.D. N.Y. 1964); *Simon v. Moseley*, 452 F.2d 306, 309 (10mo Cir. 1971).

## IV

En el caso de autos, la Srta. Mary Pacheco Torres fue sentenciada el 24 de mayo de 1988 a una pena de seis (6) meses a ser cumplidos mediante el mecanismo de sentencia suspendida. *Dicha sentencia expiraba el 23 de noviembre de 1988.* El 19 de octubre de 1988 el Ministerio Fiscal presentó solicitud para que se celebrara la vista *ex parte* de determinación de causa probable.

Casi un (1) mes más tarde, el 18 de noviembre de 1988, el tribunal de instancia señaló la vista sumaria inicial de revocación para el 21 de diciembre de 1988. Sin embargo, no se ordenó su arresto y *no fue hasta el 15 de diciembre de 1988 que se expidió la citación. Ya para esta fecha había transcurrido el período probatorio, la señorita Pacheco había cumplido su sentencia y la pena se había extinguido.* En ausencia de prueba de que ella se había evadido de la supervisión, y por lo tanto no había podido ser localizada, procedía que el tribunal se declarara sin jurisdicción para revocar la probatoria.

Como no fue notificada formalmente de las alegadas violaciones a la probatoria antes de la expiración de la misma, el proceso de revocación no fue iniciado a tiempo. Por ende, bajo nuestro actual ordenamiento, una vez extinguida la pena sin haberse comenzado el proceso de revocación, el tribunal perdió jurisdicción sobre la Srta. Mary Pacheco Torres. En estas circunstancias, ella tenía derecho a recuperar su plena libertad. "Bajo esta norma al estado se le ha impuesto el deber de ser diligente en el inicio del procedimiento. Los oficiales probatorios no sólo deben actuar con razonable prontitud una vez conocen los hechos que dan base a una revocación, sino que también deben estar atentos a posibles violaciones a la probatoria." Carrillo, *supra*, pág. 33.

Sin embargo, la opinión de este Tribunal revoca al foro de instancia bajo la premisa de que la solicitud *ex parte* del Ministerio Fiscal interrumpe el término de la sentencia suspendida y extiende indefinidamente la jurisdicción del tribunal después de transcurrido el período probatorio. La decisión asume que si el probando viola las condiciones de la sentencia suspendida antes de que transcurra el período probatorio, el tribunal conserva jurisdicción para iniciar el procedimiento de revocación después de extinguida la pena. Según esta teoría se elimina de facto el concepto de un término definido para cumplir la sentencia y el probando está sujeto a que le revoquen una probatoria que ya cumplió y lo encarcelen después de estar disfrutando de su libertad plena.

La norma adoptada hoy por el Tribunal también evade la formulación de unos criterios claros sobre el tiempo que debe transcurrir entre la expedición y el diligenciamiento de la citación. ¿Cuánto tiempo puede pasar antes de que la demora sea irrazonable? ¿Significa esto que pueden pasar seis (6) meses entre la expedición y el diligenciamiento de la citación? ¿Un (1) año?

Por otro lado, y considerando que hasta que se expide y diligencia la citación no hay una notificación adecuada al probando de que el Ministerio Fiscal inició los trámites para revocar la probatoria, la decisión del Tribunal en efecto convalida un procedimiento que es contrario al debido proceso de ley e incompatible con los derechos reconocidos en *Martínez Torres v. Amaro Pérez*, supra, y el ordenamiento procesal establecido estatutariamente. Nuestro ordenamiento constitucional parte de la premisa de que uno de los requisitos mínimos del debido proceso es una notificación adecuada, y en el caso del probando hemos afirmado que tiene derecho a conocer las alegadas violaciones a las condiciones de la probatoria antes de que se le puedan revocar los beneficios de la sentencia suspendida. Íd., pág. 725. Si transcurre el término de la probatoria sin que haya sido notificado de que debe responder por alegadas violaciones a las condiciones de la sentencia suspendida, el probando de jure está libre y no puede ser despojado de su libertad.

Hoy, este Tribunal modifica nuestro derecho constitucional y nuestra trayectoria jurisprudencial en este campo y, sin formular criterio alguno sobre el término durante el cual se extiende la jurisdicción del Tribunal, acoge la posición del Procurador General y revoca el dictamen recurrido. No podemos suscribir este nuevo curso decisorio. Por eso disentimos.

—O—

Voto particular y de conformidad emitido por el Juez Asociado Señor Alonso Alonso, al cual se une el Juez Asociado Señor Andréu García.

Un convicto al que se le ha concedido el beneficio de una sentencia suspendida queda bajo la jurisdicción del tribunal que emitió tal sentencia mientras aquél cumpla las condiciones fijadas por éste durante el término dispuesto en la sentencia. 34 L.P.R.A. sec. 1031. El momento en que se le notifica la citación al probando para que comparezca al proceso de revocación de la probatoria resulta pertinente e importante sólo para determinar la razonabilidad de cualquier demora de parte del Estado para iniciar el proceso una vez conoce de las alegadas violaciones, *vis-à-vis* el término establecido para iniciar el mismo. *Martínez Torres v. Amaro Pérez*, 116 D.P.R. 717 (1985). Pero la jurisdicción del tribunal para iniciar el proceso de revocación, aquí solicitado por el Ministerio Público dentro del término de la sentencia suspendida, se la concede el hecho de que las alegadas violaciones a las condiciones ocurren dentro de tal término.

La libertad a prueba, regulada en la Ley Núm. 259 de 3 abril de 1946, según enmendada, 34 L.P.R.A. secs. 1026–1029, representa un derecho limitado concedido por el Estado a la persona convicta de delito con el propósito de lograr su rehabilitación. *Martínez Torres v. Amaro Pérez*, supra, pág. 723; *Pueblo v. Ortega Santiago*, 125 D.P.R. 203 (1990); *Pueblo v. Vega Vélez*, 125 D.P.R. 188 (1990). Este método científico para la imposición de la pena trata de lograr la prevención del crimen a través del tratamiento individualizado, y no punitivo, del delincuente al

reconocer que todo ser humano tiene el potencial de rehabilitarse y modificar su conducta si se le brinda la oportunidad y el tratamiento adecuado a sus necesidades particulares. Véanse: Art. VI, Sec. 19, Const. E.L.A., L.P.R.A., Tomo 1; *Pueblo v. Vega Vélez,* supra; B. Rodríguez Ramos, *Leyes proveyendo para el establecimiento de la sentencia probatoria,* 16 Rev. Jur. U.P.R. 98 (1946).

Ahora bien, tal fin rehabilitador se logra a través de la imposición de unas condiciones y términos que, a su vez, propendan a la finalidad adicional que establece el estatuto: la protección de la comunidad. 34 L.P.R.A. sec. 1028.

El tribunal sentenciador pierde jurisdicción sólo cuando el probando cumple con los términos y las condiciones impuestas y transcurre el período de la sentencia en suspenso. Cuando concurren ambos eventos no se justifica la restricción limitada a la libertad que para el probando representa la probatoria supervisada. Cumplidos ambos eventos, se entienden cumplidos los objetivos de la ley. Sin embargo, no basta con que solamente transcurra el término de la probatoria para que el tribunal sentenciador pierda automáticamente su jurisdicción sobre el probando.

Prueba de lo antes dicho es que bajo el esquema de la Ley Núm. 259, *supra,* debe mantenerse constantemente informado al tribunal sentenciador sobre el cumplimiento o incumplimiento de las condiciones del probando, y dicho foro puede ordenar que se inicie el proceso de revocación tan pronto se le informe y demuestre que el probando ha incumplido con algunas de las condiciones. El sistema de tribunales es quien administra el programa de sentencias suspendidas. Es en dicho foro donde reside, por así decirlo, la custodia legal del probando. S. Rubin, *The Law of Criminal Correction,* 2da ed., Minnesota, West Publishing Co., 1973, Sec. 5, pág. 186 y Sec. 16, pág. 296. Tan continua es la autoridad del tribunal sentenciador que el juez que preside la vista preliminar de revocación de probatoria es, por imperativo de ley, el mismo juez que sentenció al probando. 34 L.P.R.A. sec. 1031.

Resulta impertinente, para propósitos jurisdiccionales, el momento en que se notifica la citación para la vista inicial de revocación de probatoria al probando. Claro está, con el fin de preservar la información reciente y cualquier evidencia testifical o documental disponible sobre las alegadas violaciones a la libertad a prueba, el debido proceso de ley exige que el Estado sea diligente y que en un término razonable tramite afirmativamente la notificación al probando de la celebración de la vista para determinar si existe causa probable para creer que éste ha violado las condiciones de la probatoria. Con ello se evita poner al probando en un estado de indefensión. *Cf. Martínez Torres v. Amaro Pérez*, supra, pág. 728. La demora, si alguna, en realizar tal notificación debe ser evaluada a la luz de las circunstancias para determinar si existió o no justa causa para la misma. La demora injustificada podría dar base a la invalidación del proceso, pero no bajo el fundamento de falta de jurisdicción del foro sentenciador sobre el probando, sino bajo la rúbrica de la violación al debido proceso de ley. Son dos (2) situaciones distintas.

Este no es el caso ante nos. Aquí la orden judicial de citación y su diligenciamiento fueron realizados por el Estado dentro de un término razonable desde que se tuvo conocimiento de las violaciones a la probatoria —2 meses— y, más aún, desde que expiró el término de la misma, 21 días.

Por ello, y por los fundamentos expuestos en la opinión del Tribunal, considero que debe revocarse la resolución dictada por el foro de instancia en este caso.